UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| Katie Grasty, individually and on behalf of all others similarly situated, | 4:22-cv-00334 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Ashley Furniture Industries, LLC, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Ashley Furniture Industries, LLC ("Defendant") markets, administers and sells extended furniture protection plans described as "service contracts" in connection with its sale of furniture ("Service").[1]

2. Fla. Stat. § 634.401(13) defines a service warranty as

> [A]ny warranty, guaranty, extended warranty or extended guaranty, maintenance service contract equal to or greater than 1 year in length or which does not meet the exemption in paragraph (a), contract agreement, or other written promise for a specific duration to perform the repair, replacement, or maintenance of a consumer Service, or for indemnification for repair, replacement, or maintenance, for operational or structural failure due to a defect in materials or workmanship, normal wear and tear, power surge, or accidental damage from handling in return for the payment of a segregated charge by the consumer [.]

## I. PLAINTIFF'S PURCHASE OF THE SERVICE

3. In October 2019, Plaintiff bought the Savesto Charcoal Sofa with a service contract from Defendant's store at 1190 Capital Cir SE, Tallahassee, FL 32301.

---

[1] Florida refers to service contracts as service warranties.



4. The total cost with delivery was over $2,300.

5. During the sales process, Defendant's representatives encouraged Plaintiff to purchase the Service by informing her it would cover any sort of damage, including damage caused by a dog ripping it, and was a prudent investment for her costly purchase.

6. Since Plaintiff's family includes a spouse, three kids, and three dogs, she was persuaded by the representative to purchase the Service given that it could provide protection and gave her peace of mind on her expensive purchase.

7. Plaintiff was not able to review the terms of the Service before her purchase.

8. After Plaintiff purchased the Service, she received a "No Use/No Lose Certificate" which told her that "If you don't use it, you won't lose it!"

9. The Certificate confirmed she made a responsible decision to purchase the Service, stating, "Congratulations on making the smart decision to protect your new furniture! We want you to be able to enjoy the beauty of your new purchase for years to come without worrying about the types or accidental stains and damages that are covered by your Guardian protection plan."

10. Plaintiff received the full service agreement electronically only after she purchased the Service.

11. Upon information and belief, the electronic transmission of the service agreement did not notify Plaintiff of her right to receive the contract via United States mail rather than electronic transmission, in violation of Fla. Stat. § 634.414(4).

12. The service agreement stated that "The Plan covers materials and labor costs to service your furniture item(s) in the event a furniture item becomes accidentally damaged during normal residential use due to stains or other covered damage or defects as more specifically described in the Service Specific Coverage section of this Plan."

13. For fabric and leather/vinyl upholstered furniture, the terms stated, "Accidental breakage of frames, springs, and sleeper, reclining, inclining, heating, and vibrating mechanisms will be covered after the manufacturer's warranty has expired."

14. After approximately two years of normal use, the base of the sofa collapsed in one spot, shortly followed by a collapse in a different location.



15. In October 2021, Plaintiff submitted a claim for coverage to Defendant's third-party provider, Guardian, who operates under Defendant's instructions.

16. Several weeks later, Plaintiff was denied coverage, as indicated below:

> The damage you have reported is not eligible for coverage under your protection plan.
>
> The plan you purchased from the retailer shown above does cover your furniture for:
>
> • breakage of frames, springs, and sleeper, reclining, inclining, heating, and vibrating mechanisms will be covered after the manufacturer's warranty has expired.
>
> However, the damages listed below are not coverages of your plan:
>
> • excessive damage, misuse, neglect, mishandling, and abuse.
>
> *Please see attached copy of your plan for details*
>
> Please understand that this is a final determination and your claim cannot be changed or altered.
>
> If desired, you may have these stain(s)/damage(s) serviced by a licensed technician at your own expense.
>
> If you do have these stain(s)/damage(s) serviced, please retain a copy of the receipt.
>
> This receipt will be required to file a claim in this same location(s) in the future.

17. No way was offered to appeal the determination of the claim.

## II.   VIOLATIONS OF SERVICE WARRANTY ASSOCIATIONS LAW

18. Defendant misrepresented and falsely advertised the benefits, advantages, conditions, or terms of the Service by describing it as a "Premium Protection Plan," stating that, "Life Happens and So Do Accidents" on its website, which constitutes violations of Fla Stat. § 634.436(1)-(2).



19. Defendant engaged in unfair claim settlement practices by making material misrepresentations to Plaintiff for the purpose of denying her claims, which were less favorable terms than those provided for by the agreement. Fla Stat. § 634.436(5)(b).

20. Specifically, Defendant cited "excessive damage, misuse, neglect, mishandling, and abuse" when it knew this was false, because Plaintiff indicated the breakage was caused by "normal use" during "normal sitting" on the sofa.

21. The only exclusion that lists misuse and neglect is #22, which excludes:

> Repairs necessitated by intentional physical damage, acts of nature, fire, burglary, theft, vandalism, collision, spilled liquids (unless resulting in a covered stain or liquid ring), corrosion, insect infestation, misuse, neglect, mishandling and abuse.

22. Defendant had no basis to classify the breakage as being caused by any activity identified in this provision.

23. Defendant denies claims based on "excessive damage, misuse, neglect, mishandling, and abuse" with such frequency as to indicate its general business practice is to fail to adequately investigate claims. Fla Stat. § 634.436(5)(c).

24. Defendant's representatives receive incentives for each customer who signs up for the Service, and are incentivized to "over-promise" its benefits and not inform customers of its numerous limitations.

25. Defendant did not ask Plaintiff further questions about the "excessive damage" it determined disqualified her from coverage.

26. Defendant failed to provide a reasonable explanation to Plaintiff of the contractual basis for her denial in relation to her specific facts.

27. Defendant failed to invite further inquiry from Plaintiff for the basis of her denial, stating that "Please understand that this is a final determination and your claim cannot be changed or altered."

28. Thousands of persons in Florida and the States covered by the proposed classes are issued the same boilerplate denials, untethered to their specific facts.

29. That Defendant fails to adequately investigate or consider claims is evinced by its form rejection letter it sends to customers like Plaintiff.

30. These letters erroneously state that they are being sent on behalf of Bob's Discount Furniture, instead of Ashley.

31. This failure to modify the retailer in the form rejection letters is indicative of the lack of care and diligence applied in investigating claims.

### III. UNLAWFUL INSURANCE POLICY

32. The Service sold by Defendant is an unlawful insurance policy, which is prohibited by Fla. Stat. § 634.428.

33. An example of a service contract is where an automobile manufacturer agrees to repair or replace car parts should they fail or break down within a specified period, i.e., 5 years or 50,000 miles.

34. However, Defendant sells the Service as protection against "accidents," or fortuitous events that happen by chance, rather than by design, such as repair of car parts within 5 years.

35. For instance, an insured cannot reasonably expect that all losses, however caused, would be reimbursed, because this would grant a windfall to the insured.

36. An insurer cannot confine causation to the point where recovery would be impossible, thereby affording a windfall in the other direction.

37. Equity is achieved by requiring that the loss be accidental or fortuitous – out of the reasonable control and expectation of both the insurer and insured.

38. The requirement of fortuity ensures that the scope of coverage provided is consistent with the reasonable expectations of the contracting parties.

39. The policy behind insurance regulation is to protect the public from surrendering its money for questionable or worthless "insurance," like the Service

40. Service contracts such as the Service sold by Defendant are subject to abuse because they sell insurance yet are not subject to the extensive regulations and capital reserve requirements of insurance companies.

41. Providers of service contracts pay no more than between four and fifteen cents per dollar to cover claims, with the rest profit.

42. Defendant misuses the terms of the Service to insure a certainty by denying claims like Plaintiff's, in bad faith and restricting the criteria to recover under the policy, which is fraud.

43. Defendant has not reasonably defined what types of damage qualifies as excessive, misuse or neglect, which results in denial of valid claims.

44. Defendant failed to meet its burden that Plaintiff's claims were not covered by the Service, because the terms in the agreement are not defined or otherwise allow it to deny coverage to all or substantially all claims.

IV. CONCLUSION

45. The Service contains other defects, representations and/or omissions which render it unlawful and deceptive.

46. As a result of the false and misleading representations, the Service is sold at a premium price, approximately no less than $229, excluding tax and sales, higher than similar services represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

47. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

48. The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

49. Plaintiff Katie Grasty is a citizen of Tallahassee, Florida, Leon County.

50. Defendant Ashley Furniture Industries, LLC is a Wisconsin limited liability company with a principal place of business in Arcadia, Wisconsin, Trempealeau County.

51. The sole member of Defendant is Ashley Holdings, Inc., a Wisconsin corporation with a principal place of business in Arcadia, Wisconsin, Trempealeau County.

52. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

53. The members of the proposed classes Plaintiff seeks to represent are more than 100, because the Service is sold at hundreds of Ashley locations in the States of the proposed classes.

54. Venue is in this District, and the action should be assigned to the Tallahassee Division, because a substantial part of the events or omissions giving rise to the claims occurred in Leon County, including Plaintiff's purchase and use of the Service, exposure to and reliance on

8

the representations, and her awareness that they were misleading.

## Parties

55. Plaintiff Katie Grasty is a citizen of Tallahassee, Florida, Leon County.

56. Defendant Ashley Furniture Industries, LLC is a Wisconsin limited liability company with a principal place of business in Arcadia, Wisconsin, Trempealeau County.

57. Defendant operates the Ashley furniture stores chain, consisting of corporate and independently licensed and operated furniture stores.

58. The non-corporate stores are subject to policies and practices of Defendant, like any franchisee.

59. Defendant is the world's largest home furniture manufacturer and the leading furniture store in the United States based on sales.

60. Plaintiff believed and expected the Service would provide protection of her purchase from accidental damage through repair, replacement, or maintenance, with assurances by sales representatives and the terms.

61. Plaintiff purchased the Service and a Savesto Charcoal Sofa and adjoining chairs at Ashley Furniture, 1190 Capital Cir SE, Tallahassee, FL 32301, in October 2019.

62. Plaintiff paid more for the Service than she would have paid had she known the representations were false and misleading, as she would not have bought it or paid less.

63. Plaintiff would consider purchasing the Service again on different terms, such as if it provided what it promised and/or at a lower price.

64. Plaintiff is unable to rely on the representations not only of this Service, but other similar services, because she is unsure whether those representations are truthful.

Class Allegations

65. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida Class:** All persons in the State of Florida and who purchased the Service during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Alabama, Montana, Alaska, Texas, Arizona, New Mexico, Mississippi, Utah, Nebraska, South Carolina, Tennessee, and Virginia who purchased the Service during the statutes of limitations for each cause of action alleged.

66. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

67. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

68. Plaintiff is an adequate representative because her interests do not conflict with other members.

69. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

70. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

71. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

72. Plaintiff seeks class-wide injunctive relief because the practices continue.

Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"),
Fla. Stat. § 501.201 *et seq.*

73. Plaintiff incorporates by reference all preceding paragraphs.

74. Defendant violated the above-identified provisions of this State's laws for warranty associations.

75. Plaintiff and class members were damaged by paying more for the Service than they would have paid had they known it was essentially worthless.

Violation of State Consumer Fraud Acts<br>(Consumer Fraud Multi-State Class)

76. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

77. The members of the Consumer Fraud Multi-State Class were harmed in the same manner as Plaintiff, and reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statutes invoked by Plaintiff.

Bad Faith Insurance Denial

78. Insurance is defined as a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event.

79. The Service purported to cover damages caused by accidents, or fortuitous events, which constitutes insurance.

80. By purchasing the Service, Plaintiff was protecting her purchase against future accidents.

81. Defendant breached the implied covenant of good faith and fair dealing by withholding benefits under the Service without cause.

82. This is because it had no basis to claim the damage was excessive or from misuse or

neglect.

83. The records of Defendant and its agents advise its adjustors to deny claims based on excessive damage and customer misuse and neglect even where it lacks evidence of these causes.

84. In so doing, Defendant frustrated the purpose of the Service, to the detriment of Plaintiff.

85. The adjustors at Guardian, working at Defendant's direction, upon information and belief, are incentivized to deny claims by policies of management and are provided detailed instructions about how to deny legitimate claims.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

86. The Service was designed, manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it was not defective, and would provide coverage for the events indicated.

87. The Service was sold to insure Plaintiff's furniture against damage and loss and expressly and impliedly warranted that it would cover accidental damage through repair, replacement, or maintenance, with assurances by sales representatives it would cover virtually anything that happened to the covered items.

88. Defendant directly marketed the Service to Plaintiff and consumers through its advertisements and marketing, in-store representatives, various forms of media, on the hang tags of the furniture, store displays, in print circulars, direct mail, and targeted digital advertising.

89. Defendant knew the attributes that potential customers like Plaintiff were seeking, such as insurance to protect against accidents, and developed its marketing to directly meet those needs and desires.

90. Defendant's representations were conveyed in writing and promised the Service

would be defect-free, and Plaintiff understood this meant that it would provide protection of one's purchases from accidental damage through repair, replacement, or maintenance, with assurances by sales representatives that it would cover virtually anything that went wrong with the covered items.

91. Defendant affirmed and promised that the Service would provide protection of one's purchases from accidental damage through repair, replacement, or maintenance.

92. Defendant described the Service so Plaintiff and consumers believed it would provide protection of one's purchases from accidental damage through repair, replacement, or maintenance, which became part of the basis of the bargain that it would conform to its affirmations and promises.

93. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Service.

94. This duty is based on Defendant's outsized role in the market for this type of Service, custodian of the Ashley brand, the largest seller of furniture in the nation.

95. Plaintiff recently became aware of Defendant's breach of the Service's warranties.

96. Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Service's express, implied and Magnusson Moss warranties.

97. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through Service reviews and online forums.

98. The Service did not conform to its affirmations of fact and promises.

99. The Service was not merchantable because it was not fit to pass in the trade as

advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it would provide protection of one's purchases from accidental damage through repair, replacement, or maintenance.

100. The Service was not merchantable because Defendant had reason to know the particular purpose for which the Service was bought by Plaintiff, because she expected it would provide protection of one's purchase from accidental damage through repair, replacement, or maintenance, with assurances by sales representatives that it would cover virtually anything that went wrong with the covered items, and she relied on Defendant's skill and judgment to select or furnish such a suitable service.

### Negligent Misrepresentation

101. Defendant had a duty to truthfully represent the Service, which it breached.

102. This duty is based on its position, holding itself out as having special knowledge and experience in this area, custodian of the Ashley brand.

103. The representations took advantage of consumers' cognitive shortcuts at the conclusion of the furniture purchasing process and trust in Ashley, a globally recognized brand.

104. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Service.

### Fraud

105. Defendant misrepresented and omitted that the Service would provide protection of one's purchase from accidental damage through repair, replacement, or maintenance.

106. Defendant's representatives receive incentives for each customer who signs up for the Service, and are incentivized to "over-promise" its benefits and not inform customers of its

numerous limitations.

## Unjust Enrichment

107. Defendant obtained benefits and monies because the Service was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the Class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary, statutory, and/or punitive damages pursuant to applicable laws;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   September 13, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com